**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS DENNIS CREEK, : <br> : <br> Petitioner, : <br> : <br> v. : <br> : <br> FEDERAL BUREAU OF PRISONS, : <br> et al., : <br> : <br> Respondents. : | Civil No. 09-5925 (JBS) <br><br> **OPINION** |

**APPEARANCES:**

    THOMAS DENNIS CREEK, Petitioner pro se
    #43645-037
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey 08640

**SIMANDLE, District Judge**

    Petitioner, Thomas Dennis Creek ("Creek"), a federal prisoner confined at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Creek names the Federal Bureau of Prisons ("BOP") and Donna Zickefoose, the Warden at FCI Fort Dix where petitioner is confined, as the party respondents in this action.

    Because it appears from a review of the Petition, pursuant to the Court of Appeals' controlling decision in <u>Gardner v. Grondolsky</u>, 585 F.3d 787 (3d Cir. 2009), that Creek is not entitled to issuance of the writ at this time, the Court will

dismiss the Petition without prejudice, pursuant to 28 U.S.C. § 2243, for the reasons set forth below.

## I.   BACKGROUND

Creek is presently serving a 72-month prison term pursuant to his federal conviction by guilty plea, in the United States District Court for the District of Maryland, on January 30, 2009. Creek had been arrested and charged with four counts, namely, (Count 1) possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1); (Count 2) possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1); (Count 3) possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c); and (Count 4) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  He pled guilty to Count 2, and the remaining Counts 1, 3 and 4 were dismissed, pursuant to a plea agreement.

Creek has not filed a direct appeal from his conviction or sentence.  Nor has he filed a motion to vacate his conviction or sentence under 28 U.S.C. § 2255.  He is currently scheduled for release on November 9, 2013, without taking into account any halfway house or residential reentry center placement period.

In his petition, Creek alleges that at his sentencing, the Court had recommended that petitioner participate in the BOP's 500 hour Residential Drug Abuse Treatment Program ("RDAP"). Creek states that he believed at that time that he would be

eligible for a sentence reduction upon successful completion of the RDAP.

However, upon arrival at FCI Fort Dix, Creek was informed that he would not be eligible for early release because he had been given a two-level increase in his offense level in his Presentence Investigation Report ("PSIR") based on the firearm charges that were dropped for his plea on the drug trafficking count, and because this two-level increase was applied at sentencing. This two-level increase, called the "gun bump," is taken from the United States Sentencing Guidelines ("USSG") § 2D1.1(b)(1).

Creek now alleges that he does not actually get the benefit of his plea agreement, because the "gun bump" effectively adds time to his prison sentence and renders him ineligible for early release even if he completes drug treatment. He claims that this is unconstitutional because the Government did not have to prove every element of the offense to the jury beyond a reasonable doubt.

Creek contends that the "gun bump" regulation implemented by the BOP violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), by categorically excluding from early release for successful completion of the RDAP those prisoners who have been convicted of offenses involving possession, carrying or use of a firearm. Creek further contends that the BOP's regulation

that categorically excludes him from the benefit of a sentence reduction under 18 U.S.C. § 3621(e)(2)(B), pursuant to a final agency rule under 28 C.F.R. § 550.58(a)(1)(vi)(B), is arbitrary, capricious and an abuse of discretion, and otherwise illegal under the APA.  Creek essentially argues that the BOP's rationale in adopting a rule to categorically exclude from eligibility for early release those prisoners convicted of offenses involving the possession of a firearm was irrational and not based upon any relevant factors.[1]  Creek substantially relies on Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008), in which the United States Court of Appeals for the Ninth Circuit held that the BOP's categorical exclusion plainly violates the APA.

Creek also argues that his failure to exhaust his administrative remedies in this case should be excused or dismissed as futile.[2]  He states that, on September 9, 2009, he

---

[1] Creek argues that 18 U.S.C. § 922(g), simple possession of a firearm by a felon, is a non-violent offense as determined by the United States Court of Appeals for the Third Circuit in Roussos v. Menifee, 122 F.3d 159, 163 (3d Cir. 1997).

[2] Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:
> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the

submitted an informal resolution or BP-8 form,[3] his correctional

---

     relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.
Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").
     In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit.  See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998).  The court recognized that exhaustion could be excused where it would be futile.  See id.  In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.
     Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  See id.  See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

    [3]  To exhaust administrative remedies before the Federal Bureau of Prisons, a federal inmate seeking review of an aspect of his confinement must first seek to resolve the dispute informally.  See 28 C.F.R. § 542.13.  If the inmate does not receive a favorable termination, he may submit a formal written

5

counselor, E. Tolbert, informed Creek that Creek was not eligible to apply for the RDAP until November 2010.

Creek submitted a BP-9 remedy to the Warden on September 22, 2009, renewing his challenge to the regulation.  He also informed the Warden that he was relying on the Ninth Circuit's decision in <u>Arrington</u>.  On September 30, 2009, Creek received a response from the Warden again reiterating that Creek was not eligible to apply for RDAP until November 2010.

On October 7, 2009, Creek filed a BP-10 administrative appeal to the BOP's Northeast Regional Office, renewing his request for an immediate answer concerning the categorical exclusion rule.  Creek expressly stated: "If I wait until November 2010 to apply, I would learn if I'm accepted or not with 32 months remaining, I would enter the Program at 28 months, I would complete the Program in 9 months, at which time a determination would be made whether I would receive time off, or incentive.  By the time the determination would be made, I would be left with 17 months to serve.  It would take me an additional

---

Administrative Remedy Request for response by the warden of the facility.  <u>See</u> 28 C.F.R. § 542.14.  If the inmate is not satisfied with the warden's response, he may appeal the warden's decision to the Regional Director within 20 days of the date of the decision.  If he is not satisfied with the Regional Director's response, he may submit an appeal of the Regional Director's decision to the Central Office within 30 days of the date of the decision.  <u>See</u> C.F.R. § 542.15.  If these responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

5 months to exhaust my Administrative Remedies, leaving me with 12 months to serve. It would then take me approximately 12 months to pursue the matter in the local District Court, at which point I'd be home!" (Petitioner's Brief, docket entry no. 1, at pp. 33-34). Creek further complains that the only BOP facilities honoring Arrington are the BOP facilities located in the Ninth Circuit.

## II. ANALYSIS

### A. Standard of Review

United States Code Title 28, Section 2243 provides in relevant part:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989). Because Creek is proceeding pro se in his application for habeas relief, the Court will accord his petition the liberal construction intended for pro se litigants.

B.  <u>An Overview of the RDAP</u>

The Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA") amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible inmates, subject to the availability of appropriations.  18 U.S.C. § 3621(e)(1).  An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii).  As an incentive for the successful completion of the residential treatment program, the BOP **may**, in its discretion reduce an inmate's sentence by up to one year.  18 U.S.C. § 3621(e)(2)(B); <u>see also</u> <u>Lopez v. Davis</u>, 531 U.S. 230 (2001).

The incentive provision of the statute reads, in pertinent part:

> The period a prisoner convicted of a **nonviolent offense** remains in custody after successfully completing a treatment program **may** be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B).  (Emphasis added).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement.  According to the regulations, in order to be considered for a residential treatment program, an inmate must have a verifiable drug abuse problem, must have no serious mental impairment which would substantially interfere with or preclude full participation in the program, must sign an agreement acknowledging his program responsibility, and must ordinarily be within 36 months of release and the security level of the residential program institution must be appropriate for the inmate.  28 U.S.C. § 550.56(a).  Participation in the program is voluntary, but all decisions on placement are made by the drug abuse treatment coordinator.  See 28 C.F.R. § 550.56(b).  The application of § 550.56 is set forth in BOP Program Statement 5330.10.[4]

In these regulations, the BOP also defined prisoners who had not been convicted of a nonviolent offense, and who thus were ineligible for early release, as those prisoners who were currently incarcerated for committing a crime of violence as

---

[4] Program Statement 5330.10 defines the RDAP as consisting of three components: (1) a 500-hour minimum unit-based residential program; (2) an institution transition phase, which requires participation for a minimum of one hour a month over a period of 12 months after successfully completing the unit-based program; and (3) a community transitional services program where the inmate is transferred to a halfway house or home confinement for a period lasting up to six months.  Successful completion of the RDAP occurs upon successful completion of each of these three components of the RDAP.  See 28 C.F.R. §§ 550.56, 550.59.

defined in 18 U.S.C. § 924(c)(3). 28 C.F.R. § 550.58 (1995); see 60 Fed. Reg. 27,692, at 27,695. Following the promulgation of this 1995 regulation, the Courts of Appeals reached differing conclusions on the question of whether the BOP had discretion to further define a crime of violence as an offense involving a firearm, and thus exclude from eligibility for the early release incentive those prisoners who were incarcerated for such offenses. See generally Lopez v. Davis, 531 U.S. at 234-35.[5]

---

[5] In Lopez, the Supreme Court held that it was a proper exercise of discretion by the Bureau of Prisons to categorically deny eligibility for early release to prisoners with "a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses," 28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current offense is one of certain enumerated felonies involving the use or attempted use of force, or involving the carrying, possession, or use of a firearm or other dangerous weapon, or involving sexual abuse upon children, 28 U.S.C. § 550.58(a)(1)(vi). In reaching this conclusion, the Court first noted that the language of § 3621(e)(2)(B) grants the Bureau discretion to reduce a prisoner's sentence for successful completion of a substance abuse treatment program, but fails to define any parameters by which the Bureau should exercise that discretion.

> In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design." We think the agency's interpretation is reasonable both in taking account of preconviction conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citing, inter alia, Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842 (1984))(other citations omitted). Thus, "the statute's restriction of early release eligibility to nonviolent offenders does not cut short the considerations that may guide the Bureau." Lopez, 531 U.S. at 242. See also Magnin v. Beeler, 110 F.Supp.2d

Given the split among the Circuits, the BOP promulgated an interim regulation on October 15, 1997, and made the regulation effective approximately one week prior, on October 9, 1997.  28 C.F.R. § 550.58(a)(1)(vi)(B)(1997); 62 Fed. Reg. 53,690.  The 1997 interim regulation, like the one it superceded, made ineligible for the early release incentive those prisoners incarcerated for an offense that involved the possession, use, or carrying of a firearm.  28 C.F.R. § 550.58(a)(1)(vi)(B).  The 1997 interim regulation differs from the 1995 regulation by relying on "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates," 62 Fed. Reg. At 53,690, rather than purporting to define the statutory terms "prisoner convicted of a nonviolent offense" or "crime of violence."

The commentary accompanying publication of the 1997 interim regulation noted that the BOP was "publishing this change as an interim rule in order to solicit public comment while continuing to provide consideration for early release to qualified inmates." 62 Fed. Reg. At 53,690.  Nevertheless, the effect of the implemented interim regulation was to deny program eligibility to certain categories of inmates confined at that time and until promulgation of a final regulation.  The commentary to the

---

338 (D.N.J. 2000) (upholding 28 C.F.R. §550.58(a)(1)(vi), before Lopez, as a valid exercise of the Bureau's discretion).

interim regulation further provided that comments on the interim rule were due on December 15, 1997, and that the comments would be considered before final action was taken.[6]

Three years later, on December 22, 2000, the BOP replaced the 1997 interim regulation with a final regulation, which adopted the 1997 interim regulation without change. See 65 Fed. Reg. 80,745. The final regulation was effective as of December 22, 2000. Id. The commentary accompanying the final regulation noted that the BOP had received and considered approximately 150 comments from individuals and organizations, 138 of which were identical. Id. at 80,747. Thus, the final regulation read, in pertinent part, as follows:

> Consideration for early release.
> > An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
> > (a) Additional early release criteria.
> > (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the

---

[6] In Lopez v. Davis, while the Supreme Court held that the 1997 interim regulation's categorical exclusion of prisoners based on their involvement with firearms in connection with the commission of a felony was a permissible exercise of the Bureau's discretion, the Court declined to consider the arguments of various *amici* that the 1997 interim regulations violated the notice-and-comment provisions of the APA, as that argument had not been raised or decided below, or presented in the petition for certiorari. 531 U.S. at 230, 244 n.6.

>     following categories of inmates are not eligible for
>     early release:
>     . . .
>     (vi) Inmates whose current offense is a felony:
>     . . .
>     (B) That involved the carrying, possession, or use of a
>     firearm or other dangerous weapon or explosives
>     (including any explosive material or explosive device),
>     ...

5 U.S.C. § 550.58 (2000).  The regulation has remained unchanged since 2000.  See also BOP Program Statements 5330.10, *Drug Abuse Programs Manual – Inmate* (1997), and 5162.04, § 7, *Categorization of Offenses* (1997)("All offenses under 18 U.S.C. § 922(g) shall preclude an inmate from receiving certain Bureau program benefits.").

   The Administrative Procedure Act requires, with exceptions not relevant here, that proposed rules be published in the Federal Register, not less than 30 days before the proposed rule's effective date, and provide a period for interested persons to comment on the proposed rule, which comments are to be considered by the agency prior to adopting the rule.  See 5 U.S.C. § 553(b), (c), (d).

   Following promulgation of the 1997 interim regulation, the United States Court of Appeals for the Ninth Circuit determined that the 1997 interim regulation was invalid, for failure to follow the notice-and-comment requirements of the APA.  See Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005).  The 2000 final rule, however, complied with the notice-and-comment requirements.  More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as

13

"arbitrary and capricious" in violation of § 706(2)(A) of the APA, for failure to set forth a rationale for its categorical exclusion rule.  Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008).  As noted above, it is clear from the Petition that Creek is substantially relying on the Ninth Circuit's decision in Arrington.

C.   Petition Must Be Dismissed

This Court finds that, even though Creek has not fully exhausted his administrative remedies, his claim for relief has not merit, and the Petition must be dismissed.

The Court of Appeals for the Third Circuit has recently rejected Arrington, as have all other circuit courts considering the issue.  See Snipe v. Dept. of Justice, 2008 WL 5412868 (N.D.W.Va. Dec. 23, 2008)(collecting cases).  In Gardner v. Grondolsky, 585 F.3d 786 (3d Cir. 2009), the Court of Appeals examined the petitioner's challenge to the BOP regulation categorically excluding felons whose offense involved possession of firearms from early release based upon participation in RDAP.  The Court of Appeals concluded that "the BOP articulated a sufficient rationale for 28 C.F.R. § 550.58(a)(1)(vi)(B)(2000) to satisfy the 'arbitrary and capricious' standard set forth in APA § 706(2)(A).  Although the BOP's public safety rationale was not explicit in the Federal Register notices for the 1997 or 2000 regulations, we conclude that the rationale may 'reasonably be discerned' from the regulatory history and attendant litigation."  Gardner, 585 F.3d at 792 (citing Motor Vehicle Mfrs. Ass'n v.

14

State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) and Gatewood v. Outlaw, 560 F.3d 843, 847 (8th Cir. 2009)).  The Court of Appeals went on to hold:

> ... the BOP's efforts to categorically exclude felons convicted of possession of a dangerous weapon from eligibility for early release have remained consistent since 1995.  The BOP amended the 1995 version of its regulation only because it could no longer uniformly apply it after the split among the Courts of Appeals developed concerning the BOP's Program Statement; the BOP expressly referred to the Circuit split in both its 1997 and 2000 Federal Register notices.  Because the litigation focused on the BOP's Program Statements, we find it both reasonable and appropriate to consider the Program Statements when discerning the agency's rationale for promulgating the 1997 and 2000 regulations.
>
> The BOP Program Statements expressly provide that the BOP's contemporaneous rationale for the categorical exclusion has consistently been for the purpose of protecting public safety. Courts reviewing the regulation have long recognized the BOP's public safety rationale.  See, e.g., Pelissero[v. Thompson], 170 F.3d [442,] 445 [4th Cir. 1999](quoting the district court's conclusion that it is "entirely reasonable and certainly not arbitrary for the BOP to equate gun possession and drug dealing with violence, thus supporting its interpretation of not being a 'nonviolent offense'"); Venegas v. Henman, 126 F.3d 760, 765 (5th Cir. 1997)(the BOP's "determination that a sufficient nexus exists between the offenses at issue and a substantial risk of violence is a valid exercise of discretion which this Court will not disturb").

Gardner, 585 F.3d at 792 (internal citations omitted).

Furthermore, the Court of Appeals found that the Arrington court discounted the aspect of Lopez, which upheld the reasonableness of the 1997 interim regulation and the public safety rationale asserted by the BOP.  See id. at 792-93. Additionally, the Court of Appeals asserted that, "the language of the regulation itself facially manifests a concern for protecting the public safety," and explained that the regulation

15

denied eligibility for early release to other categories of prisoners who committed crimes demonstrating a potential for violence, including homicide, rape robbery, etc. See id. at 793 (citing 28 C.F.R. § 550.58(a)(1))(other citation omitted).

Therefore, based upon the Gardner case, Creek is not entitled to relief on this claim. See Bruce v. Grondolsky, 2010 WL 56047, *5,6 (D.N.J. Jan. 4, 2010)(Simandle, J.).

### IV.  CONCLUSION

For the reasons set forth above, this Petition for habeas relief under 28 U.S.C. § 2241, in which Creek challenges his categorical exclusion from consideration for early release under 18 U.S.C. § 3621(e), will be dismissed with prejudice. An appropriate order follows.

                s/ Jerome B. Simandle
                JEROME B. SIMANDLE
                United States District Judge

Dated: **May 6, 2010**